569 F.2d 784
 Lynell FRANKLIN, Charles Jones, Lawrence Wilson, and Charles
R. Vette, Appellants,
v.
Pleasant C. SHIELDS, Morris L. Ridley, W. K. Cunningham,
Margaret Davis, N. W. Perdue, Appellees.
Lynell FRANKLIN, Charles Jones, Lawrence Wilson, and Charles
R. Vette, Appellees,
v.
Pleasant C. SHIELDS, Morris L. Ridley, W. K. Cunningham,
Margaret Davis, N. W. Perdue, Appellants.
Lee Royal WILLIAMS, Appellee,
v.
VIRGINIA PROBATION AND PAROLE BOARD, Appellant.
 Nos. 75-2056, 75-2057 and 75-2167.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1976.
Decided Sept. 19, 1977.
Upon Rehearing En Banc Jan. 3, 1978.
Certiorari Denied April 24, 1978.
 
 See 98 S.Ct. 1659.
 Michael Woodward, Third Year Law Student (Michael E. Geltner, New York City (court-assigned counsel) on brief), for appellee in 75-2167.
 Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. and (Andrew P. Miller, Atty. Gen. of Va., Richmond, Va., on brief), for appellants in 75-2057 and 75-2167 and appellees in 75-2056.
 Before WINTER and BUTZNER, Circuit Judges, and FIELD, Senior Circuit Judge.
 BUTZNER, Circuit Judge:
 
 
 1
 On appeal, the Virginia Probation and Parole Board challenges the district court's ruling that the fourteenth amendment's due process clause applies to parole release proceedings. We affirm. Both the Board and the prisoners question the specific procedural safeguards which the court found were constitutionally required in such proceedings. With respect to these, we affirm in part, reverse in part, and remand.
 
 
 2
 The four plaintiffs in Franklin[1] are Virginia prisoners who were eligible for parole but were denied release. Each filed a pro se complaint challenging the procedures by which they were denied parole and requesting injunctive relief and damages. The district court consolidated the four cases and appointed counsel, granting leave to file an amended complaint. Named as defendants were the five members of the Virginia Probation and Parole Board in their individual and representative capacities. The plaintiffs sought injunctive relief on behalf of a class consisting of all Virginia prisoners potentially eligible for parole. On appeal, we consolidated Franklin with Williams,[2] which raises substantially the same issues.
 
 
 3
 The prisoners argue that the due process clause entitles them to the following protections with respect to parole:
 
 
 4
 (1) Written notice or access to written notice of the standards and criteria used by the Board in determining whether parole will be granted;
 
 
 5
 (2) A hearing and personal appearance before the Board regarding the parole decision in their cases;
 
 
 6
 (3) An opportunity to inspect their prison files which are utilized by the Board in determining whether parole will be granted;
 
 
 7
 (4) An opportunity at the parole hearing to call witnesses and present evidence in support of a favorable parole decision, and an opportunity to cross-examine persons who have provided information to the Board which adversely affects their chances for parole;
 
 
 8
 (5) Appointed counsel or appropriate counsel substitutes at the hearing when specific facts are in dispute or when counsel is needed to assist them in communicating; and
 
 
 9
 (6) A statement of reasons for the denial of parole that are substantially related to the criteria used by the Board in making parole determinations and an indication of the changes in attitudes, habits, etc. which will be required before parole will be granted.
 
 
 10
 After the initial complaints were filed, the Board adopted several of these procedures as a matter of policy. Nonetheless, it denied that they were constitutionally required, and it refused to give assurances that they would be retained.
 
 
 11
 In Franklin, the district court concluded that parole proceedings are subject to the due process clause.[3] Specifically, it held that the standards and criteria governing parole decisions must be published; that a personal hearing is required; that prisoners must be allowed access to the information in their files on which the parole decision is based, unless such access would threaten prison security or potentially harm the inmate or others; and that prisoners must be given a statement of reasons when parole is denied. The district judge concluded, however, that due process does not require that prisoners be given the right to call and cross-examine witnesses, nor does it require that counsel be allowed at parole hearings. Other than directing the Board to devise a plan to allow prisoners limited access to their files, the court found the Board's existing procedures constitutionally adequate, and it denied all other injunctive relief. It stayed all class relief pending appeal, but kept its injunction in force for the benefit of the individual plaintiffs. Finally, it held that the defendants, having acted in good faith, are immune from damage suits. In Williams, the district court followed Franklin and also ruled that the Board does not have to draft a parole plan for each prisoner.
 
 I.
 
 12
 The fourteenth amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . " The application of this clause to parole proceedings involves two questions: first, is a prisoner's interest in parole protected by the fourteenth amendment; and second, if it is, what specific procedures are required to assure due process of law? We turn to the first issue.
 
 
 13
 The prisoners' interest in these proceedings is the present right to be considered for parole, a right created by Virginia law.[4] This feature of Virginia's correctional system is not based on any constitutional requirement, because a state is not obliged to provide a parole system for its prisoners. Thus, the prisoners' interest is aptly described as a privilege or a matter of grace. Nevertheless, this characterization of the prisoners' interest does not defeat their claim. The distinction between a right and a privilege is no longer an acceptable basis for determining whether the due process clause applies to a governmental benefit.[5]
 
 
 14
 The Supreme Court has held that if state law creates a right which involves a person's liberty, the individual possessing this right is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."[6] Relying on this principle, the Court has ruled that the due process clause applies to prison disciplinary proceedings involving forfeiture of statutory privileges and to probation and parole revocation proceedings.[7] Conversely, a state does not deprive a prisoner of due process by summarily transferring him from one prison to another if it has not created a right to confinement in a particular prison.[8] Therefore, we must examine the Virginia statutes governing release on parole: first, to ascertain what rights are granted a prisoner by these statutes; and second, to determine if these rights involve the prisoner's liberty.
 
 
 15
 Under Virginia law, every person imprisoned for a felony becomes eligible for parole after serving one fourth of his term or 12 years, whichever is less. A person sentenced to life imprisonment becomes eligible after serving 15 years.[9] The Board is authorized to adopt rules granting release on parole,[10] conduct hearings, issue subpoenas, administer oaths, and take testimony.[11] The statutes direct the Board to investigate "the history, the physical and mental condition, and the character of the prisoner, and his conduct, employment and attitude while in prison."[12] The Board must then determine whether parole "will be compatible with the interests of the prisoner and society."[13] The Board must review each eligible prisoner's case annually until he is released.[14] Thus, it is readily apparent from an examination of Virginia law that a prisoner has a right to be considered for parole, and that this right is protected by statutory safeguards.
 
 
 16
 Since the Virginia statutes contemplate that a prisoner who has satisfied all the requirements for parole will be conditionally released, the Board's investigation and review are crucial. A prisoner has much at stake in properly conducted parole proceedings, for they may result in his conditional freedom.[15] If the proceedings are flawed even unintentionally and in good faith, through reliance on incomplete or incorrect information they may add years to a prisoner's confinement. Consequently, the accuracy and the sufficiency of the information the Board obtains in its investigation, which the statutes require, can have a decisive effect on parole. Also, whether the Board's review is full and fair, as contemplated by the statutes, may be a determinative factor in the grant or denial of parole. Therefore, we hold that the statutes governing the manner in which a prisoner shall be considered for parole confer on the prisoner an interest in liberty.
 
 
 17
 Because a prisoner has a statutory right to fair parole consideration, and because this right involves the prisoner's liberty, we conclude that parole is subject to the due process clause. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 484 (1974), confirms this conclusion. In Wolff, the Court noted that one effect of depriving a Nebraska prisoner of his statutory good behavior credits is to delay his conditional release.[16] It held that the prisoner was entitled to the minimal due process safeguards necessary to assure that the state would not arbitrarily revoke his credits.[17] Similarly, in Virginia, arbitrary denial of parole would unjustifiably delay a prisoner's conditional release. The fact that the proceeding in Wolff was disciplinary, and therefore, adversary, does not alter our conclusion, although parole reviews are generally considered non-adversary.[18] A person need not be involved in an adversary proceeding to invoke the protection of the due process clause.[19] The non-adversary posture influences which procedural safeguards are necessary, but it does not disguise the essential nature of the liberty interest that the Virginia parole statutes confer on a prisoner.[20]
 
 
 18
 We therefore conclude that as in Wolff, the minimum requirements of procedural due process appropriate for the circumstances must be observed.[21]II.
 
 
 19
 Having concluded that the due process clause is applicable to parole release proceedings, we must now determine what procedural safeguards are necessary. The requisites of due process vary according to the individual's interests and the governmental functions that are involved.[22] The arbitrary denial of parole to a prisoner who satisfies all requirements for release is indeed a grievous loss. Although this loss in itself would not invoke the protection of the due process clause,[23] its severity is an important factor in determining the appropriate procedures to follow.[24] Nevertheless, because parole release proceedings are not part of a criminal prosecution, a prisoner is not entitled to the full panoply of rights accorded a defendant at trial. Instead, the prisoner's rights must be determined by balancing the importance to him of specific safeguards against the burden on the government.[25]
 
 
 20
 Like parole revocation as described in Morrissey v. Brewer, 408 U.S. 471, 479-80, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), consideration for parole involves two steps. The first is the acquisition of all pertinent information about the prisoner. This is largely a clerical function, but it is important to both prisoner and state. The second, more complex step involves an evaluation of the facts and "the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts."[26]
 
 
 21
 Broadly speaking, the prisoner's concern is to avoid the arbitrary denial of parole. Because the state is interested in protecting the public and in restoring the prisoner to a useful life, it too must be concerned that parole be neither granted nor denied on the basis of inaccurate information or erroneous evaluation.[27] The state also has an immediate interest in maintaining security.[28] Therefore, it must not be encumbered with procedures which might undermine discipline. With these sometimes competing interests in mind, we will consider in turn each of the procedural protections which the prisoners claim and the state resists.
 
 III.
 Criteria for Parole
 
 22
 The district court concluded that the due process clause requires the Board to publish the criteria governing their parole decision. It also ruled that the standards adopted by the Board while this case was pending are sufficient, and it denied injunctive relief.[29] We affirm.
 
 
 23
 The Virginia statutory standard for parole is phrased in broad terms that define a goal rather than specific criteria for release. The statute provides that the Board must determine whether parole "will be compatible with the interests of the prisoner and society."[30] This kind of statute typically needs to be supplemented by administrative regulations,[31] and the Virginia legislature has authorized the Board to make such rules.[32] They are the Board's expert interpretation of the broad statutory grounds for release. They announce the factors the Board will consider in administering the statutes.[33] Without specific guidelines for parole determination, neither the Board, its staff, nor the prisoners can ascertain how to apply the statutory standard uniformly to each case. It is only fair to apprise prisoners of the standards to which they must conform. Indeed, an administrative agency's failure to articulate the standards of eligibility for a governmental benefit is an indicium of a denial of due process.[34] One commentator has observed:
 
 
 24
 Prisoners should have a right to know the law that so vitally affects them: "It is an essential element of justice that the rules and processes for measuring parole readiness be known to the inmate. . . . One can imagine nothing more cruel, inhuman, and frustrating than serving a prison term without knowledge of what will be measured and the rules for determining whether one is ready for release."[35]
 
 
 25
 Nevertheless, the Board insists that it is not constitutionally required to publish the criteria governing parole decisions. In support of its position, it relies on Haymes v. Regan, 525 F.2d 540 (2d Cir. 1975), which held that the due process clause does not require the disclosure of such guidelines.[36] The Haymes court, however, was writing in the wake of an earlier case which held that the due process clause required a parole board to furnish each prisoner a statement of its reasons for denying parole.[37] The court was also influenced by a recently enacted New York statute requiring each prisoner to be informed of the reasons for parole denial. Such a statement, the court reasoned, diminished the necessity for published criteria.
 
 
 26
 The Board's reliance on Haymes is misplaced. Virginia has no statute similar to New York's, and the Board protests that it is not constitutionally required to explain why a prisoner has been denied parole. In short, the Board seeks to rely on the result in Haymes without accepting its reasoning.
 
 
 27
 Moreover, we are not persuaded that a statement of reasons for denial of parole is an adequate substitute for published criteria. Unless the Board publishes its precedents, the reasons for denying parole in a given case become known to the other prisoners only through the jail grapevine. Therefore, prisoners are likely to be misinformed by distorted rumors of the standards by which they will be judged. Also, providing a prisoner with reasons for the denial of parole apprises him of these standards only after the Board has acted. Granted, he can then seek to remedy the deficiency. But this is simply an example of the adage about locking the barn door after the horse is stolen. It is of slight benefit to the prisoner, for in Virginia, the initial parole decision is not made until one quarter of the prisoner's term has been served.
 
 
 28
 In contrast to the prisoner's interest in promptly learning the criteria by which his application for parole will be measured, the state can assert no logical justification based on discipline or rehabilitation for denying knowledge of parole criteria to a prisoner at the start of his term. Indeed, the National Advisory Commission on Criminal Justice Standards and Goals has emphasized that it is to the state's advantage to acquaint prisoners with parole standards:
 
 
 29
 Articulation of criteria for making decisions and development of basic policies is one of the chief tasks that parole decision makers need to undertake. . . . Articulation of criteria is crucial to staff and inmates alike. The notion of an inmate's participation in a program of change depends on an open information system. His sense of just treatment is inextricably bound with it.[38]
 
 
 30
 Accordingly, after weighing the interests of both the prisoners and the state, we conclude that the due process clause requires the Board to make their parole criteria readily available to all prisoners.
 
 IV.
 Hearings and Counsel
 
 31
 The district court found that three of the prisoners were denied due process of law because they were refused parole without a hearing. Although the Board asserts that parole hearings are not constitutionally required, while this case was pending, it changed its policy to grant all eligible prisoners an interview by at least two of its members. The court deemed this policy procedurally adequate. It entered a declaratory judgment that such hearings were constitutionally required, but it denied injunctive relief. We affirm.
 
 
 32
 In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950), the Court said:
 
 
 33
 Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.
 
 
 34
 Consistently, the Court has held that a person may not be deprived of an interest in liberty or property that is protected by the due process clause without at least some type of notice and hearing.[39] Prisoners possessing a protected interest are not excepted from this rule. For example, although a parolee lacks a constitutional right to his status,[40] he is entitled to a hearing before the state revokes his parole.[41] Similarly, a prisoner who faces a loss of his good behavior credits must be afforded a hearing.[42]
 
 
 35
 Virginia law specifies the type of investigation the Board must undertake before granting parole.[43] By prescribing what information the Board must study, the statute confers on the prisoner a right to be considered for parole according to rational specifications. To make this right effective, a prisoner should be able to explain and amplify the information on which the Board will base its decision. Only a personal hearing can assure him an adequate opportunity to aid the Board in obtaining complete and accurate data.
 
 
 36
 Compared with the prisoner's interest, the state has little at stake in denying a hearing other than administrative inconvenience and cost. These factors have not been deemed sufficient in other instances to deprive prisoners of their interest in liberty acquired under state laws.[44] "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."[45] We therefore conclude that prisoners eligible for parole are entitled to the due process clause's minimum basic protection of reasonable notice and a personal hearing. We agree, however, with the district court that the principles expressed in Wolff bar the prisoners' claim for counsel, even on a selective basis.[46]
 
 V.
 Access to Files
 
 37
 The district court found that the plaintiffs
 
 
 38
 have demonstrated that some of the information in their files is factually erroneous and that the Board does not undertake to verify the information contained therein in the absence of obvious error. 399 F.Supp. at 313.
 
 
 39
 It therefore concluded that a prisoner should be afforded access to the information in his files on which the parole decision is to be based, unless such access threatens prison security or poses harm to someone. The court did not, however, direct that the prisoners be allowed unrestricted access. Instead, it directed the Parole Board to establish procedures for access that would take into consideration the interests of both the prisoner and the state. We affirm.
 
 
 40
 In Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 1414, 3 L.Ed.2d 1377 (1959), the Court stated:
 
 
 41
 Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. . . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases . . . but also in all types of cases where administrative and regulatory actions were under scrutiny.
 
 
 42
 This principle is applicable to the prisoner who is eligible for parole. Because his interest in liberty is at stake, he stands to suffer serious injury if he is denied parole on the basis of inaccurate or incomplete information.[47] Since the data on which the Board acts is not developed through an open adversary confrontation, its accuracy cannot be assured unless the prisoner has access to the relevant information in his file.[48]
 
 
 43
 The state, too, is interested in the accuracy of the information in a prisoner's file. It is concerned with both the encouragement of the prisoner's rehabilitation and the safety of the public, both of which depend on the Board's ability to assemble accurate and sufficient data.[49] Nevertheless, the state has other interests which are not advanced by disclosure. The district court found that in fiscal 1973-74 the Board considered 3,792 applications for parole. This number has increased since then to over 4,000. Confronted by this large number of applicants, the Board seeks to limit the administrative costs of parole while preventing the release of information harmful to the prisoner or any other person. These interests of both the prisoner and the state must be considered in determining whether due process of law encompasses the prisoner's access to his file.[50]
 
 
 44
 The state's concern in forbidding access to the files does not outweigh the prisoner's interest. However, that concern does require that the Board be given broad discretion in structuring a procedure for allowing prisoners access. The record indicates that Virginia keeps two copies of each file, one of which follows the prisoner from one institution to another. Thus, the cost of duplicating files or transporting prisoners to a file center presents no substantial problem. The state, however, does have an interest in withholding information which could adversely affect rehabilitation and discipline. For example, the disclosure of documents such as psychiatrists' reports might harm the prisoner. Access to other documents, such as critical statements made by members of his family or by other prisoners might cause breaches of discipline and harm to the informants. Therefore, the state may develop procedures for removing such documents from a prisoner's file before allowing him access to it.
 
 
 45
 Moreover, if the Board decides that the burden of allowing all prisoners eligible for parole access to their files is too great, it might consider permitting only those prisoners to whom parole has been denied to have access. Were the prisoner to find a material mistake upon examination of his file, he could petition for rehearing. See Holup v. Gates, 544 F.2d 82, 87 (2d Cir. 1976). An alternative procedure would be for the Board to advise the prisoner of all adverse information upon which it will rely in its deliberation, in lieu of allowing him to inspect his file. Such a procedure has been deemed a constitutionally viable means of disclosure of evidence with respect to pre-sentence reports. See, e. g., Baker v. United States, 388 F.2d 931 (4th Cir. 1968); cf. Fed.R.Crim.P. 32(c)(3).[51]
 
 VI.
 Witnesses
 
 46
 The district court held that prisoners have no constitutional right either to call witnesses in their own behalf or to cross-examine adverse witnesses. The court reasoned that allowing them to call witnesses would add time and expense to parole hearings and might inhibit some persons from furnishing information. The court noted that the interests shared by a prisoner and the Board might be undermined if the proceeding became adversary.[52] Finally, it observed that since the grant or denial of parole depends in large part on predicting a prisoner's future conduct, witnesses do not play as important a role as they do in hearings which explore past events. We agree with the district judge that these factors justify denial of the right to confront and cross-examine people who have furnished the Board information about the prisoner. In Wolff,[53] the Supreme Court held that prisoners facing loss of good behavior credits in disciplinary proceedings were not entitled to confront and cross-examine witnesses because of the hazards to institutional interests. The same hazards attend parole hearings, and the prisoner's interest in cross-examination is outweighed by the institution's interest in safety. Nevertheless, we believe that these precautions should not outweigh a prisoner's right to present testimony in support of his application for parole.
 
 
 47
 In contrast to its denial of confrontation and cross-examination, Wolff recognized that to assure a fair hearing, prisoners should be allowed to present documentary evidence and witnesses in their own behalf when this will not jeopardize safety or correctional goals. With respect to parole proceedings, prisoners are entitled to the same opportunity. The hazards engendered by the presentation of supporting testimony and documentary evidence are considerably less than those attending confrontation and cross-examination.
 
 
 48
 A prisoner should be allowed to present evidence directed to the Board's function of predicting whether parole will be successful.[54] This includes evidence from a prospective employer about the type of work available; from a spouse about the home environment the prisoner can expect; and in the case of young offenders, parents' testimony about the guidance they can offer. Although this evidence generally can be presented in writing, some witnesses express themselves most effectively verbally. Therefore, on occasion, oral testimony may provide the best means of furnishing this information. Obviously, a prisoner has an interest in offering such evidence. The state's refusal to consider oral testimony is difficult to justify, for the Board, as well as the prisoner, needs informed opinions about the prospects for an applicant's rehabilitation if he receives parole.
 
 
 49
 Nevertheless, as the Court noted in Wolff, a prisoner cannot exercise absolutely the right to present evidence. A parole hearing presents no occasion for calling witnesses to relitigate either the prisoner's conviction or the charges brought against him for breaches of institutional discipline. The prisoner must not be allowed to use permission to call witnesses and introduce evidence to transform the hearing into an adversary proceeding. The Board must possess broad discretion to limit reasonably the subject matter of the hearing and to prevent disruption of the proceedings.
 
 
 50
 The district court found that under present rules, the Board hears witnesses who wish to testify on behalf of the prisoner at its headquarters in Richmond. We believe that this complies with the minimal requirements of the due process clause. Since a parole proceeding is not a criminal trial, the prisoner need not be present when witnesses testify. The practice of the Board of excluding the witnesses from the hearings conducted in prisons appears to be justified by considerations of discipline and security.
 
 
 51
 Therefore, we conclude: (a) subject to the Board's discretion to reasonably limit the hearing, the due process clause entitles a prisoner to present documentary evidence and witnesses in support of his application for parole; and (b) the Board's present procedures are constitutionally adequate.
 
 VII.
 Reasons for Denial of Parole
 
 52
 We uphold the district judge's ruling that the due process clause requires the Board to furnish a written statement of its reasons for denying parole. We also believe the court correctly concluded that the Board's present procedure of supplying general reasons which are substantially related to the criteria and providing further explanation on request is constitutionally adequate. The court's judgment rests on sound precedent, for virtually every court that has considered the issue has recognized the necessity of giving an unsuccessful applicant a written explanation for his failure.[55]
 
 
 53
 In cases where judicial review is specifically provided by statute, the Supreme Court has required that administrative decisions be supported by a statement of reasons. In SEC v. Chenery Corp., 332 U.S. 194, 196-97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), the Court said:
 
 
 54
 If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action . . . .
 
 
 55
 This sound principle has not, however, been limited to instances of statutory review. In Wolff, though no such review was involved, the Court held that a prisoner deprived of good time credit was entitled to a written statement of the reasons for the decision. It emphasized that a record does much to assure that administrators will act fairly in disciplinary proceedings.[56]
 
 
 56
 We find the reasoning in Wolff applicable to parole release proceedings. A written statement of the Board's decision serves the interests of both the state and the prisoner. The Board is prohibited from paroling a prisoner until it has determined that his release "will be compatible with the interests of the prisoner and society."[57] Conversely, the statutes imply that a prisoner will be released if he meets this exacting standard as interpreted by the Board in its guidelines, and if he is otherwise eligible for parole. Unless the Board states its reasons, it is impossible to determine whether it has properly afforded the prisoner his statutory right to be fairly considered for parole.
 
 
 57
 In many instances, by furnishing the reasons for parole denial, the Board can instruct the prisoner about the changes that are expected of him if he is to meet the criteria for release. As the record reveals, however, there are some prisoners who are not considered fit for parole because of such a factor as a long history of recidivism. These prisoners are not in a position to remedy their deficiencies even if the Board states its reasons in writing. Nevertheless, a statement of reasons is important, for it will show that the Board has not acted arbitrarily.[58]
 
 
 58
 The only interest the state has against supplying reasons for parole denial is the added administrative burden of preparing a formal statement, but this cost is little when measured against the benefits. We agree with the district court that reasons which are reasonably related to the criteria published by the Board are sufficient. Tested by this standard, the reasons given in these cases are adequate.[59]VIII.
 
 
 59
 We affirm the district court's conclusion that the members of the Parole Board, who perform a quasi-judicial function, are immune from suits for damages under 42 U.S.C. § 1983. Pope v. Chew, 521 F.2d 400, 405 (4th Cir. 1975).
 
 
 60
 We further conclude that because the prisoners have substantially prevailed, they should recover their costs and reasonable attorneys' fees, which the district court should allow on remand. 42 U.S.C. § 1988.[60] The judgment in:
 
 
 61
 and the cases are remanded for further proceedings.
 
 
 62
 FIELD, Senior Circuit Judge, concurring and dissenting:
 
 
 63
 In drawing heavily upon Wolff and Morrissey to reach the conclusion that the minimum requirements of procedural due process apply to parole release proceedings, Judge Butzner's opinion unquestionably accords with the majority of the courts which have had occasion to consider this question.[1] Whether the prescience of these decisions will ultimately prove to be valid is problematical for, as Judge Friendly has noted, "(t)he past observations of the Court have pointed in both directions."[2] However, despite the fact that the Court has not yet spoken definitively on the question, I am not disposed to quarrel with Judge Butzner's well articulated conclusion on this point, especially in view of the array of decisions which support it.
 
 
 64
 My point of departure with my brothers is that they have gone much too far in their determination of the "procedural safeguards" to be accorded a prisoner and which they find to be constitutionally mandated. If due process applies to parole release proceedings, assuredly the requirements are less than those incident to parole revocation. This seems reasonably clear from the reference in Morrissey[3] to Judge Kaufman's observation that:
 
 
 65
 "It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom."
 
 
 66
 United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079, 1086 (2 Cir. 1971).
 
 
 67
 The vast difference between a parole release determination and a parole revocation proceeding was well stated in Wiley v. United States Board of Parole, 380 F.Supp. 1194, 1200 (M.D.Pa.1974):
 
 
 68
 "Unlike a parole release decision, a necessary precondition to a parolee's reincarceration is a finding that he has violated a condition of his parole. The parolee's loss of his conditional freedom turns in large part on a retrospective determination of a specific factual question. In contrast, the parole release decision, as emphasized above, is a prognostic determination with respect to one's suitability for parole and is based on a complex of tangible and intangible factors and involves the discretionary application of knowledge derived from such fields as psychology, criminology, sociology and penology. While the parole revocation proceeding basically is concerned with making a factual determination with respect to parole violation, parole decision-making centers on making a diagnostic and predictive determination with respect to whether the rehabilitation of the prisoner and the welfare of society generally would be best served by granting the inmate conditional freedom rather than by his physical confinement."
 
 
 69
 In view of the limited "liberty interest" of a parole aspirant and the complex elements involved in a parole release determination, it occurs to me that constitutional due process is satisfied when the prisoner is furnished a statement of the reasons for denial of parole, and I would require nothing further. Such a statement will ordinarily disclose whether the parole authorities acted upon erroneous information and whether their action was arbitrary or capricious. To require the publication of specific and detailed guidelines would, in my opinion, destroy the flexibility of discretion necessarily inherent in a parole release determination, and with the exception of Childs v. United States Board of Parole, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974), none of the cases cited in the majority opinion found such guidelines to be constitutionally required.[4]
 
 
 70
 Even more objectionable and unwarranted is the conclusion of the majority that a prisoner is entitled, as a matter of course, to have access to his file. The burden cast upon the State by such a requirement clearly outweighs any interest of the prisoner, and I have been unable to find any appellate case holding that the constitution mandates such a disclosure. In Billiteri v. United States Bd. of Parole, 541 F.2d 938, 945 (2 Cir. 1976), the court bluntly stated:
 
 
 71
 "The petitioner, therefore, has no such constitutional right to the information in the Parole Board's file, including but not limited to the presentence report and the examiner panel's report."
 
 
 72
 This language was quoted and emphasized by Judge Friendly in Williams v. Ward, 556 F.2d 1143, 1160 (2 Cir. 1977), where the court concluded that the prisoner was not entitled to such access.
 
 
 73
 The burden placed upon the state by the majority is not ameliorated to any degree by the suggestion that the files may be stripped of certain confidential or diagnostic material. As the majority notes, the state would be required to review some 4,000 files annually to determine what information should properly be excluded, and I perceive no constitutional reason to place such a burden upon the personnel and resources of the state Parole Board. On this point, I again refer to Williams v. Ward, supra, 556 F.2d at 1160:
 
 
 74
 "We do not wish to prejudge the issues left for examination in the Holup remand, and observe only that the 5850 parole applications processed each year in New York State, * * * , suggests the burden of redacting files for all parole applicants can be a considerable one. Generally, a Haymes statement of reasons and facts will suffice to tell whether the parole board has relied on an impermissible reason or a reason for which there is no support in the record; what an inmate might find most often upon inspection of institutional files is that there is 'some evidence' to support the board's reasons for denial, but evidence which he believes is outweighed by other facts. One hesitates, to echo Mr. Justice White, to place the federal courts fully astride the discretionary decisions of state parole boards * * * ." (Emphasis in original). (Citations omitted).
 
 
 75
 Finally, I see no valid reason to require that the Board hear witnesses to testify on behalf of a prisoner. Again, no other court of appeals has discerned such a constitutional requirement, and like the access to files, it places an undue burden upon the state and tends to cast the proceeding in an adversary posture. If the Board desires to call a witness on some point germane to its deliberations it is, of course, free to do so; but the election should be the prerogative of the Board and not the prisoner.
 
 
 76
 We are not concerned here with whether the "procedural safeguards" advocated by the majority are desirable, but whether they are mandated by the Fourteenth Amendment. I think they are not. "The temptation to hold that all seemingly good ideas are constitutionally compelled is one which must be avoided, especially in an area such as parole, where the Board is entrusted with extremely broad discretion and a grave responsibility." La Bonte v. Gates, 406 F.Supp. 1227, 1232 (D.Conn.1976). I would confine the "safeguards" to a statement of reasons for denial of release.
 
 PER CURIAM:
 
 77
 Upon the vote of a majority of the active judges, these cases have been reconsidered en banc upon the records and briefs originally filed. While we are in accord with the conclusion of the panel that the minimum requirements of procedural due process apply to parole release proceedings, we disagree with the determination of our esteemed brothers of the panel majority with respect to the procedural safeguards which they find to be constitutionally mandated.
 
 
 78
 In our opinion the Constitution imposes upon the parole authorities the requirement that within the bounds of reasonableness they should deal openly and fairly with each prisoner who is being considered for parole, but with full discretion to maintain an appropriate balance between the rights of the prisoner and the legitimate concerns of the state. In this nascent area the parole authorities should be allowed a wide range for experimentation and the exercise of discretion, and the courts should tread cautiously in subjecting them to specific and inflexible constitutional standards.
 
 
 79
 The record discloses that the Virginia parole authorities have discharged their constitutional obligation. In adopting written guidelines for the granting of parole the Board has exhibited commendable concern for the rights of the prisoners and we find it unnecessary to presently consider whether its efforts along this line are constitutionally required. Similarly, we discern no constitutional requirement that each prisoner receive a personal hearing, have access to his files, or be entitled to call witnesses in his behalf to appear before the Board. These are all matters which are better left to the discretion of the parole authorities.
 
 
 80
 We agree with the panel dissent that at the present time the only explicit constitutional requisite is that the Board furnish to the prisoner a statement of its reasons for denial of parole. In Franklin, the district court refused to grant an injunction to require the Board to furnish the prisoner a statement of its reasons for denial of parole because it found the Board already was doing just that, and that the procedures used were without fault. We are of opinion this ruling of the district court was correct, and its judgment in this respect is affirmed. Accordingly, the judgment of the district court in Franklin is affirmed in part and reversed in part, and the judgment of the district court in Williams is reversed, and the cases are remanded for further proceedings consistent herewith. Since the prisoners have not substantially prevailed in this litigation, we see no basis for the award of attorneys fees and costs under 42 U.S.C.A. § 1988.
 
 
 81
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED WITH INSTRUCTIONS.
 
 
 82
 Judge WINTER and Judge BUTZNER dissent and adhere to the views expressed by Judge BUTZNER in the majority opinion for the panel.
 
 
 83
 WIDENER, Circuit Judge, concurring and dissenting:
 
 
 84
 While I concur in the result and in nearly all of the opinion of the majority, I think we "anticipate a question of constitutional law in advance of the necessity of deciding it." Ashwander v. TVA, 297 U.S. 288, 346 (56 S.Ct. 466, 483, 80 L.Ed. 688) (1936) (Mr. Justice Brandeis concurring). Since the Board already does everything that may be constitutionally required, including giving the reasons for a denial of parole, I think an approach preferable to the dictum would be to assume that if there were a constitutional requirement, it has been lived up to, thus avoiding a question "of a constitutional nature unless absolutely necessary to a decision of the case." Burton v. United States, 196 U.S. 283, 295 (25 S.Ct. 243, 245, 49 L.Ed. 482) (1905).
 
 
 
 [1]
 The district court's opinion is reported as Franklin v. Shields, 399 F.Supp. 309 (W.D.Va.1975)
 
 
 [2]
 The district court's opinion is reported as Williams v. Virginia Probation and Parole Bd., 401 F.Supp. 1371 (W.D.Va.1975)
 
 
 [3]
 The court based its conclusion on Bradford v. Weinstein, 519 F.2d 728 (4th Cir. 1974). This decision was later vacated as moot, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)
 
 
 [4]
 The prisoners do not claim that the interest at stake is the right to be paroled; they do not base their claim on a present right to be released or even on an unqualified right of future release. Indeed, had they framed the issues in those terms, it is doubtful that they would be entitled to the protection of the due process clause. Cf. Cruz v. Skelton, 543 F.2d 86 (5th Cir. 1976); Brown v. Lundgren, 528 F.2d 1050 (5th Cir. 1976); Scarpa v. United States Bd. of Parole, 477 F.2d 278 (5th Cir.), judgment vacated and remanded for a determination of mootness, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44, dismissed as moot, 501 F.2d 992 (1973)
 
 
 [5]
 In Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 4, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973), the Court said:
 It is clear at least after Morrissey v. Brewer . . . that a probationer can no longer be denied due process, in reliance on the dictum in Escoe v. Zerbst, 295 U.S. 490, 492 (55 S.Ct. 818, 79 L.Ed. 1566) (1935), that probation is an "act of grace."
 See also Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Project, Parole Release Decisionmaking and the Sentencing Process, 84 Yale L.J. 810, 842-48 (1975).
 
 
 [6]
 Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)
 
 
 [7]
 Wolff v. McDonnell, 418 U.S. 539, 555-58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 480-82, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)
 
 
 [8]
 Meachum v. Fano, 427 U.S. 215, 95 S.Ct. 2532, 49 L.Ed.2d 451 (1976)
 
 
 [9]
 Va. Code Ann. § 53-251 (1976 Cum.Supp.)
 Eligibility for parole. (1) Except as herein otherwise provided, every person convicted of a felony, and sentenced and committed under the laws of this Commonwealth to any State correctional institution shall be eligible for parole after serving one fourth of the term of imprisonment imposed, or after serving twelve years of the term of imprisonment imposed if one fourth of the term of imprisonment imposed is more than twelve years. In case of terms of imprisonment to be served consecutively, the total time imposed shall constitute the term of the imprisonment; in the case of terms of imprisonment to be served concurrently, the longest term imposed shall be the term of imprisonment.
 (2) Persons sentenced to die shall not be eligible for parole.
 (3) Persons sentenced to life imprisonment shall be eligible for parole after serving fifteen years.
 (3a) Any person who has been sentenced to two or more life sentences shall not be eligible for parole until after serving twenty years of imprisonment.
 (4) The eligibility time for parole as specified in (1) and (3) above may be modified as provided in §§ 53-213.1 and 53-220.
 (5) The time for eligibility for parole as specified in paragraph (3a) hereof shall be effective on July one, nineteen hundred and seventy-six, and shall apply only to those criminal acts committed on or after the aforementioned date.
 
 
 [10]
 Va. Code Ann. § 53-238 (1974)
 Functions, powers and duties of Board. In addition to other functions, powers and duties conferred and imposed upon the Board by this article, the Board shall, subject to other provisions of the chapter:
 (1) Adopt rules. Adopt, subject to approval by the Governor, general rules governing the granting of parole.
 
 
 [11]
 Va. Code Ann. § 53-239 (1974)
 Hearings and subpoenas. The Board is authorized to hold and conduct hearings, to issue subpoenas requiring the attendance of witnesses and the production of records, memoranda, papers and other documents before the Board or any representative of the Board, and to administer oaths and to take testimony thereunder. In its discretion the Board may authorize any member of the Board to hold and conduct hearings, issue subpoenas, and administer oaths and take testimony thereunder. If any person shall fail or refuse to obey any such subpoena issued by the Board or any member thereof, or shall hinder the orderly conduct and decorum of any hearing held and conducted by the Board or any member thereof, he shall be guilty of a misdemeanor and upon conviction shall be punished accordingly. (1942, p. 304; Michie Code 1942, § 4788d; R.P. 1948, § 52-239; 1970, c. 648.)
 See also Va. Code Ann. § 53-254 (1974).
 Public or private hearings. Hearings by the Board may be either public or private. (1942, p. 307; Michie Code 1942, § 4788j; R.P. 1948, § 53-254; 1970, c. 648).
 
 
 [12]
 Va. Code Ann. § 53-253 (1974)
 Thorough investigation prior to release. No person shall be released on parole by the Board until it has made, or caused to be made, a thorough investigation as to the history, the physical and mental condition, and the character of the prisoner and his conduct, employment and attitude while in prison, nor until the Board has determined that his release on parole will be compatible with the interests of the prisoner and of society. (1942, p. 307; Michie Code 1942, § 4788j; R.P. 1948, § 53-253; 1970, c. 648.)
 
 
 [13]
 Id
 
 
 [14]
 Va. Code Ann. § 53-252 (1974)
 Times at which Probation and Parole Board to review cases. The Probation and Parole Board shall review the case of each prisoner as he becomes eligible for parole and at least annually thereafter until he is released on parole or otherwise. The Board may in addition thereto review the case of any prisoner eligible for parole at any other time when it is of the opinion that such should be done. (1942, p. 307; Michie Code 1942, § 4788j; R.P. 1948, § 53-252; 1966, c. 638.)
 
 
 [15]
 See Childs v. United States Bd. of Parole, 167 U.S.App.D.C. 268, 276, 511 F.2d 1270, 1278 (1974); See also opening statement of Representative Robert Kastenmeier in Corrections, Federal and State Parole Systems: Hearings on H.R. 13118 Before a Subcomm. of the House Committee on the Judiciary, 92d Cong., 2d Sess., ser. 15, pt. 7A, at 1 (1972). After a series of visits to various federal and state prisons where he conducted hearings, Representative Kastenmeier concluded:
 Parole is the dominant concern and dominant source of frustration in virtually every prison. Prison riots capture headlines, but parole is in control of the mind and heart of virtually every prisoner.
 Kastenmeier and Eglit, Parole Release Decisionmaking: Rehabilitation, Expertise, and the Demise of Mythology, 22 Am.U.L.Rev. 477, 487 (1973).
 
 
 [16]
 Neb.Rev.Stat. § 83-1,107 (Cum.Supp.1972), quoted at 418 U.S. 539, 546-47, 94 S.Ct. 2963, 41 L.Ed.2d 484
 
 
 [17]
 "We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government . . . . Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." 418 U.S. at 558, 94 S.Ct. at 2976
 
 
 [18]
 See Hyser v. Reed, 115 U.S.App.D.C. 254, 264, 267, 318 F.2d 225, 235, 238 (1963)
 
 
 [19]
 See Goldsmith v. United States Bd. of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926)
 
 
 [20]
 See Meachum v. Fano, 427 U.S. 215, 223-24, 95 S.Ct. 2532, 49 L.Ed.2d 451 (1976)
 
 
 [21]
 The following courts have also concluded that the due process clause applies to parole release proceedings although they differ as to what specific procedures are due: United States ex rel. Richerson v. Wolff, 525 F.2d 797 (7th Cir. 1975); Haymes v. Regan, 525 F.2d 540 (2d Cir. 1975); Bradford v. Weinstein, 519 F.2d 728 (4th Cir. 1974), vacated as moot 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); Childs v. United States Bd. of Parole, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974); United States ex rel. Johnson v. Chairman, N.Y. State Bd. of Parole, 500 F.2d 925 (2d Cir. 1974), vacated as moot sub nom. Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed. 289 (1974); Garcia v. United States Bd. of Parole, 409 F.Supp. 1230 (N.D.Ill., E.D.1976); Cicero v. Olgiati, 410 F.Supp. 1080 (S.D.N.Y.1976); Soloway v. Weger, 389 F.Supp. 409 (M.D.Penn.1974); Cooley v. Sigler, 381 F.Supp. 441 (D.Minn.1974); Craft v. Att'y Gen. of United States, 379 F.Supp. 538 (M.D.Penn.1974); Candarini v. Att'y Gen. of United States, 369 F.Supp. 1132 (E.D.N.Y.1974); Johnson v. Heggie, 362 F.Supp. 851 (D.Colo.1973); United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (E.D.Penn.1973); cf. Monks v. N.J. State Parole Bd., 58 N.J. 238, 277 A.2d 193 (1971). But see Cruz v. Skelton, 543 F.2d 86 (5th Cir. 1976); Brown v. Lundgren, 528 F.2d 1050 (5th Cir. 1976); Scarpa v. United States Bd. of Parole, 447 F.2d 278 (5th Cir.), judgment vacated and remanded for a determination of mootness, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44, dismissed as moot, 501 F.2d 992 (1973)
 
 
 [22]
 Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)
 
 
 [23]
 Meachum v. Fano, 427 U.S. 215, 224, 95 S.Ct. 2532, 49 L.Ed.2d 451 (1976)
 
 
 [24]
 Goss v. Lopez, 419 U.S. 565, 575-76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)
 
 
 [25]
 Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)
 
 
 [26]
 408 U.S. at 480, 92 S.Ct. at 2599
 
 
 [27]
 Cf. Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). See generally Note, Procedural Due Process in Parole Release Proceedings Existing Rules, Recent Court Decisions and Experience in the Prison, 60 Minn.L.Rev. 341, 352-56 (1976)
 
 
 [28]
 Wolff v. McDonnell, 418 U.S. 539, 561-62, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)
 
 
 [29]
 The Virginia Probation and Parole Board adopted the following criteria to guide their parole decisions:
 
 
 [1]
 Whether there is a substantial risk that the individual will not conform to the conditions of parole
 
 
 [2]
 Whether the individual's release at the time of consideration would depreciate the seriousness of the individual's crime or promote disrespect for law
 
 
 [3]
 Whether the individual's release would have substantial adverse affect on institutional discipline
 
 
 [4]
 Whether the individual's continued correctional treatment, vocational or other training in the institution will substantially enhance his capacity to lead a law abiding life when released at a later date
 The Board has particularized the information which it considers in connection with each of these factors. It examines the prisoner's sentence data, his present offense, his prior criminal record, and his personal and social history. It also considers the prisoner's institutional experience, any changes in his motivation or behavior, and plans which he has made upon being released. Finally, the Board looks to rehabilitative programs available in the prisoner's community, scientific data concerning the prisoner, and general impressions gained from the parole hearing.
 
 
 [30]
 Va. Code Ann. § 53-253 (1974), supra note 12
 
 
 [31]
 Friendly, The Federal Administrative Agencies: The Need for Better Definition of Standards, 75 Harv.L.Rev. 863 (1962)
 
 
 [32]
 Va. Code Ann. § 53-238(1) (1974), supra note 10
 
 
 [33]
 See Note, The Applicability of Due Process and State Freedom of Information Acts to Parole Release Hearings, 27 Syracuse L.Rev. 1011, 1024-26 (1976)
 
 
 [34]
 White v. Roughton, 530 F.2d 750, 753-54 (7th Cir. 1976)
 
 
 [35]
 K. Davis, Discretionary Justice 132 (1969), quoting Porter, Criteria for Parole Selection, Proceedings of American Correctional Association 227 (1958)
 
 
 [36]
 Haymes, it should be noted, is in direct conflict with Childs v. United States Bd. of Parole, 371 F.Supp. 1246, 1247-48 (D.D.C.1974), which held that the federal government must publish "reasonably comprehensive explanatory guidelines as the criteria to be considered in passing upon applications for parole." The government did not appeal this aspect of the case. See Childs v. United States Bd. of Parole, 167 U.S.App.D.C. 268, 270, 511 F.2d 1270, 1272 (1974). Instead, the federal parole board, which was experimenting with the use of such criteria on a regional basis, adopted them nationally as a permanent part of its parole system. 28 C.F.R. §§ 2.18-2.20 (1976)
 
 
 [37]
 United States ex rel. Johnson v. Chairman, N. Y. State Bd. of Parole, 500 F.2d 925 (2d Cir. 1974), vacated as moot sub nom. Regan v. Johnson, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974)
 
 
 [38]
 National Advisory Commission on Criminal Justice Standards and Goals, Corrections 397 (1973)
 
 
 [39]
 See Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)
 
 
 [40]
 Goss v. Lopez, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)
 
 
 [41]
 Morrissey v. Brewer, 408 U.S. 471, 487, 94 S.Ct. 2593, 33 L.Ed. 484 (1972)
 
 
 [42]
 Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)
 
 
 [43]
 Va. Code Ann. § 53-253 (1974), supra note 12
 
 
 [44]
 Morrissey v. Brewer, 408 U.S. 471, 94 S.Ct. 2593, 33 L.Ed.2d 935 (1972); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 725 (1974)
 
 
 [45]
 Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1864)
 
 
 [46]
 418 U.S. at 569-70, 94 S.Ct. 2963. See also Holup v. Gates, 544 F.2d 82, 84-85 (2d Cir. 1976)
 
 
 [47]
 See President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections 86 (1967):
 It will often be of great importance to the offender being considered for parole that he have access to the data on which the parole board will base its decision. . . . In the absence of compelling reasons for nondisclosure of specific information, the defendant and his lawyer should be permitted access to all such information.
 
 
 [48]
 See, e. g., Merritt, Due Process in Parole Granting: A Current Assessment, 10 J.Mar.J. of Prac. & Proc. 93, 101-06 (1976)
 
 
 [49]
 Cf. Gagnon v. Scarpelli, 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973), where the Court said:
 Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.
 
 
 [50]
 See Holup v. Gates, 544 F.2d 82, 85-87 (2d Cir. 1976)
 
 
 [51]
 Other courts have concluded that applicants for parole should be given access to their files. See, e. g., Coralluzzo v. N. Y. State Parole Bd., 420 F.Supp. 592 (W.D.N.Y.1976); Cooley v. Sigler, 381 F.Supp. 441 (D.Minn.1974). Cf. United States ex rel. Carson v. Taylor, 540 F.2d 1156 (2d Cir. 1976) (parole revocation)
 
 
 [52]
 Cf. Hyser v. Reed, 318 F.2d 225, 237 (1963)
 
 
 [53]
 418 U.S. at 566-68, 94 S.Ct. 2963
 
 
 [54]
 See Note: Procedural Due Process in Parole Release Proceedings Existing Rules, Recent Court Decisions, and Experience in the Prison, 60 Minn.L.Rev. 341, 357-60 (1976)
 
 
 [55]
 See supra note 21
 
 
 [56]
 418 U.S. at 564-65, 94 S.Ct. 2963; see also Morrissey v. Brewer, 408 U.S. 471, 489, 94 S.Ct. 2963, 41 L.Ed.2d 735 (1972)
 
 
 [57]
 Va. Code Ann. § 53-253 (1974), supra note 12
 
 
 [58]
 See Bowman v. United States Bd. of Parole, 411 F.Supp. 329 (W.D.Wis.1976)
 
 
 [59]
 In Franklin, the Parole Board gave the following reasons for denying parole to each of the prisoners: Charles Jones was denied parole because his criminal record dated back to 1964. Lawrence Wilson's denial was based on his long history of abusing intoxicants, and the fact that he had violated work release earlier in the year. Lynell Franklin was denied release based upon his past record and the inconsistency in his behavioral adjustment. Charles Vette was denied parole because his criminal record dated back to his fifteenth birthday, and because his release would depreciate the seriousness of his offense and was incompatible with the welfare of society
 We think that these reasons are sufficient to explain to each prisoner why he was denied parole, and that they are rationally related to the standards and criteria adopted by the Board. With respect to the reasons given Vette, several courts have questioned whether so general a statement as "depreciating the seriousness of the offense" can serve adequately to inform the prisoner of the rationale for the parole board decision. See e.g., Garcia v. United States Bd. of Parole, 409 F.Supp. 1230 (N.D.Ill., E.D.1976); Soloway v. Weger, 389 F.Supp. 409, 411 (M.D.Penn.1974); Lupo v. Norton, 371 F.Supp. 156, 162 (D.Conn.1974). However, we need not decide this issue because the Board also pointed to Vette's history of recidivism.
 In Williams, the prisoner was denied parole because of his long record of violations and his failure to profit from probation. We agree with the district judge that these reasons are adequate, and that the Board need not provide parole plans for prisoners.
 
 
 [60]
 Pub.L. 94-559, § 2, 90 Stat. 2641 (codified at 42 U.S.C. § 1988 (1976)) reads in part:
 In any action or proceeding to enforce a provision of sections 1981 to 1983, 1985, and 1986 of this title, chapter 38 of Title 20, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or subchapter V of chapter 21 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [1]
 This is demonstrated by the collation of decisions in footnote 21 of the majority opinion
 
 
 [2]
 Williams v. Ward, 556 F.2d 1143, 1157 (2 Cir. 1977). The opinion refers to the observation of Mr. Justice White in Meachum v. Fano, 427 U.S. 215, 229 fn. 8, 95 S.Ct. 2532, 49 L.Ed.2d 451 (1976): "The granting of parole has itself not yet been deemed a function to which due process requirements are applicable." Id., at 1158
 
 
 [3]
 408 U.S. 471, 482, fn. 8, 92 S.Ct. 2593, 33 L.Ed.2d 484
 
 
 [4]
 In Childs, the government did not appeal from the district court's decision that such guidelines were required, and much that was stated in Childs must now be viewed in the light of the enactment of the Parole Commission and Reorganization Act, Pub.L. No. 94-233, which was signed into law on March 15, 1976, 18 U.S.C. §§ 4201-4218