Ronald Elvin DENNIS, Petitioner,

v.

Herman S. SOLEM, Warden, South Dakota State Penitentiary, Sioux Falls, South Dakota, and Mark V. Meierhenry, Attorney General, Pierre, South Dakota, Respondents.

Civ. No. 80–1021.

United States District Court,
D. South Dakota, N. D.

Sept. 22, 1981.

Richard P. Tieszen, Duncan, Olinger, Srstka, Robbennolt & Lovald, Pierre, S. D., for petitioner.

Mikal Hanson, Asst. Atty. Gen., Pierre, S. D., for respondents.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Petitioner filed this application for a writ of habeas corpus, alleging, among other things, that the South Dakota Board of Pardons and Paroles violated his due process rights when it failed to file written findings of its reasons for setting his indeterminate sentence of one to twenty years at fifteen years. The Court finds and concludes that petitioner's due process rights were in fact violated. The writ shall issue but issuance is stayed to a date certain, on conditions stated in the opinion.

### FACTUAL BACKGROUND

Petitioner was convicted, by a plea of guilty, of first degree robbery, and sentenced on October 9, 1975, to an indeterminate sentence of one to twenty years in the South Dakota state penitentiary. Under the statute authorizing this sentence, SDCL 23–48–43, a definite sentence was to be later set by the State Board of Pardons and Paroles (the Board) "upon facts and conclusions established by a scientific study and observation of the habits, disposition, character, conduct and general tendencies of the convict." On April 23, 1976, the Board conducted a hearing at the penitentiary, and on April 28, 1976, entered an Order setting petitioner's sentence at fifteen years, without enumerating its reasons for the action.

Petitioner filed for post-conviction relief on February 27, 1978, in state court, raising the Board's failure to enter specific findings in setting his sentence as one of several claims for relief. While denying petitioner's other claims, the state trial judge found that SDCL 23–48–43 required written findings and conclusions. On September 11, 1978 the state judge entered an Order that within ninety days of the service of the Order the Board was to file its findings and conclusions as to the determination of peti-

tioner's sentence. The Order also contained a clause stating that the "Court may consider the entry of an Order releasing [petitioner] as a possible remedy upon non-compliance with this Order." It is undisputed that as of the date of the evidentiary hearing before this Court on August 25, 1981, no such findings and conclusions had ever been filed, even though respondent conceded service of the judge's Order on the Board.

On September 5, 1979 petitioner filed a petition for a writ of habeas corpus with the same state judge, asking for the remedy of release suggested in the September 11, 1978 Order. The state judge denied the petition on October 1, 1979, citing lack of jurisdiction and "the further reason this is a subject of a pending post-conviction proceeding."

Petitioner thereafter commenced this action before this Court.

### DISCUSSION

#### I.

Respondent argues first that petitioner has failed to properly exhaust his state remedies and is therefore barred from raising these claims before this Court.

As respondent points out, petitioner never appealed the trial court decision in the state post-conviction proceedings. There are a variety of reasons, however, why his failure to appeal is irrelevant to this proceeding. First, it is by no means clear that the post-conviction proceeding has ever reached final judgment, rendering the trial court's decision appealable. As noted above, the judge presiding over the post-conviction action indicated in 1979, a year after his order requiring the Board to file its findings, he still considered the petition for post-conviction release to be pending. Nothing has happened in the case since that time, and if the action is even now still pending in state court, it seems evident that inability of the state court to reach final judgment is because of the Board's failure to comply with the state judge's Order so that the case could be completed. It appears from respondents' concessions at the evidentiary hearing in this case that the Board's failure was inten-

tional, resulting from the Board's disagreement with the state judge's Order. The Board, however, did not appeal the Order. The law is well settled that "exhaustion is a doctrine of comity and where it appears the state has been unnecessarily and intentionally dilatory . . . to hold that a petitioner is still precluded from pursuing his remedy in a federal court reduces the Great Writ to a sham and mockery." *Mucie v. Missouri State Department of Corrections*, 543 F.2d 633, 638 (8th Cir. 1976).

Second, even if petitioner had been in a position to appeal, there appears little reason (or perhaps even standing) to appeal the portion of the state judge's determinations that was favorable to him; namely, the September 11, 1978 order requiring findings. Respondent argues now that petitioner had methods available to him to enforce this order, such as contempt and mandamus, and that until he has done so, his state remedies are unexhausted. This, however, is asking much of petitioner. Although petitioner now has a high school diploma equivalency, petitioner completed just the eighth grade in school. At the time of the Board's hearing setting sentence, petitioner was only eighteen, and had never been in a penitentiary before. Petitioner's court-appointed attorney on the post-conviction proceedings testified that he had doubted that he had authority in his appointment to do anything to see that the September 11, 1978 order was enforced, and petitioner was left to enforce the order by himself. He did attempt to do this, in his state petition for habeas corpus, but it was summarily denied.

The language of *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408–09, 30 L.Ed.2d 418 (1971) is instructive:

Section 2254 does not erect insuperable or successive barriers to the invocation of federal habeas corpus. The exhaustion requirement is merely an accommodation of our federal system designed to give the State an initial "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights. . . . Petitioners are not required to file 'repetitious applications' in the state courts . . . nor does the mere possibility of success in additional proceedings bar federal relief. . . .

"The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of . . . separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in conclusion he may find only that none of the [alternatives] is appropriate or effective.

It must be observed that petitioner is in a remarkable factual position of having prevailed in state court only to see the state disregard the state court's order. Petitioner should have been able to assume that the court's order would be obeyed. He should not have had to choose which of numerous legal remedies, esoteric at best to a person in petitioner's position, was proper to enforce the order from his penitentiary cell. It is this Court's view that petitioner has adequately exhausted his state remedies and may present his claim to this Court.

## II.

In regard to the substantive merits of this action, respondents contend that even if petitioner was entitled to written findings, the failure of the Board to enter the findings is not a violation of petitioner's due process rights cognizable under § 2254. Respondent, in making this assertion, overlooks *Connecticut Board of Pardons v. Dumschat*, —— U.S. ——, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) and *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). A state might, as did Connecticut, enact an early release statute that "imposes no limit on what procedure is to be followed, what evidence may be considered, or what criteria are to be applied," *Dumschat*, —— U.S. at ——, 101 S.Ct. at 2465, 69 L.Ed.2d at 166, and thus create no constitutional entitlement. But when a statute goes further and enumerates certain specific standards governing the granting or denial of release, "the inmates' expectancy of . . . release 'is entitled to some measure of constitutional protection.' " *Id.* This latter type of early release statute was before the Court in *Greenholtz*.

At issue in *Greenholtz* was the Nebraska statutory scheme which provided that the Board of Parole "shall" order that an in-

mate be released "unless" one of four statutory reasons for denial was present. The Court declined to hold that two procedures mandated by the lower courts were necessary to protect the "expectancy of release" that the Court found had been created by the Nebraska statute. The Court did note, however, that the "Nebraska procedure affords an opportunity to be heard, *and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances.*" *Greenholtz*, 442 U.S. at 16, 99 S.Ct. at 2108 (emphasis supplied).

It can hardly be argued that the minimum protections found necessary in *Greenholtz*, including the requirement that the Board make known its reasons for taking the action it did, are not applicable to SDCL 23–48–43. There is little apparent difference between the expectancy created by a statute allowing for early release by parole, as was the case in *Greenholtz*, and a statute allowing for early release by giving the State Board the power to fix an indeterminate sentence at a term shorter than the maximum, as is the case with SDCL 23–48–43. In addition, SDCL 23–48–43 does not give the Board an "unfettered discretion" in determining the length of an interminate sentence. Instead, the statute directs that the term can be fixed only after a "scientific" observation of "the habits, disposition, character, conduct and general tendencies" of the inmate. This language clearly implies that if the inmate's "habits, disposition, character, conduct and general tendencies" are favorable, the Board will respond by setting the sentence at a low term; conversely, if these "habits" are unfavorable, the sentence will be set at a higher number of years. As the case of *Franklin v. Shields*, 569 F.2d 784 (4th Cir. 1977) cited in *Greenholtz* at 442 U.S. 15, 99 S.Ct. 2108, in this regard, stated, "[u]nless the Board states its reasons, it is impossible to determine whether it has properly afforded the prisoner his statutory right to be fairly considered for [a low sentence] . . . a statement of reasons is important, for it will show that the Board has not acted arbitrari-

ly." 569 F.2d at 797. *See also Wolff v. McDonnel*, 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) (the requirement of a written statement of reasons "helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.")

It is not enough, as respondent belatedly offers to do, to formulate and file the findings of a hearing held over five years ago. Whatever reasons the Board may have used for setting petitioner's sentence must be long since forgotten, and any statement now without a new hearing would be inadequate to repair the damage done to petitioner's rights. The court therefore orders that a writ of habeas corpus be issued commanding the release of petitioner. This order shall be stayed for ninety days, during which time the state may, if it shows that the violation of petitioner's constitutional rights found in this memorandum has been remedied, make an appropriate motion to this Court to vacate the Order.[1]

---

1. In view of this holding, this Court need not reach the other claims raised in the petition.