**Melvin X. FLEMING, #133467, Petitioner,**

**v.**

**Edward W. MURRAY, Director of the Virginia Department of Corrections, Respondent.**

No. 2:93CV1113.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 7, 1994.

Melvin X. Fleming, Baskerville, VA, pro se.

Pamela Anne Sargent, Office of Atty. Gen. of Va., Richmond, VA, for respondent Edward W. Murray, Director of the Va. Dept. of Corrections.

### *FINAL ORDER*

CLARKE, District Judge.

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254.

The petition alleges violation of federal rights pertaining to denial of parole by the Virginia Parole Board related to his convictions on January 21, 1983, and February 2, 1984, in the Circuit Court of the City of Richmond.

The matter was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia for report and recommendation. Report of the Magistrate Judge was filed on July 25, 1994, recommending dismissal of the petition. By copy of the report, each party was advised of his right to file written objec-

tions to the findings and recommendations made by the Magistrate Judge. The Court has received no objections to the Magistrate Judge's Report and Recommendation and the time for filing same has expired.

The Court does hereby accept the findings and recommendations set forth in the report of the United States Magistrate Judge filed July 25, 1994, and it is, therefore ORDERED that the petition be DENIED and DISMISSED on the basis of the merits and that judgment be entered in favor of the respondent.

Petitioner may appeal from the judgment entered pursuant to this Final Order by filing a *written* notice of appeal with the Clerk of this court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within 30 days from the date of entry of such judgment. For the reasons stated in said report, the court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of probable cause for appeal.

The Clerk shall mail a copy of this Final Order to the petitioner and to counsel of record for the respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BRADBERRY, United States Magistrate Judge.

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia.

## I. STATEMENT OF THE CASE

### A. Background

In January 1983, petitioner was convicted in the Circuit Court for the City of Richmond, Virginia, of breaking-and-entering and was sentenced to serve seven years in the Virginia state penitentiary, three suspended, for a net of four years to serve.

Petitioner entered the Virginia Department of Corrections on April 4, 1983, and was released on discretionary parole on July 13, 1983.

On November 11, 1983, petitioner was arrested for armed robbery. On December 15, 1983, the robbery charge was certified to a grand jury after a preliminary hearing in the Richmond General District Court, Division I. Thereafter, on December 21, 1983, a parole board warrant was issued to petitioner for violation of Condition I of his parole, an agreement to obey all municipal, county, state, and federal laws and ordinances.

In February 1984, the Richmond Circuit Court convicted petitioner of robbery and sentenced him to a fifteen year term to run consecutively with the 1983 sentence he received.

On February 24, 1984, the petitioner appeared in Richmond Circuit Court at a revocation hearing. Following the hearing, the court revoked his previously suspended sentence and imposed the three additional years upon him, the time to run consecutively.

On April 5, 1984, petitioner's parole on the 1983 breaking-and-entering charges was revoked.

John B. Metzger, Chairman of the Virginia Parole Board, in a sworn affidavit filed May 31, 1994, stated that petitioner's discretionary parole eligibility date was May 31, 1988, and his mandatory parole release date is November 21, 1994.

Petitioner was most recently considered for parole on March 30, 1994, and parole was denied. The Board cited the serious nature and circumstance of petitioner's offense and his prior failure when placed on community supervision, rendering it unlikely, in the opinion of the Parole Board, that petitioner would comply with the conditions of parole.

Petitioner was also considered for parole in March 1988; February 1989; May 1990; March 1991; June 1992; and March 1993. He was denied parole, in writing, on each occasion for one or more of the following reasons: The serious nature and circumstance of his offense; his prior failure under community supervision indicating that petitioner was unlikely to comply with conditions

of parole; his serious disregard for the property rights of others; parole failure; parole failure as a result of committing a violent crime (robbery); and/or a record of poor institutional conduct.

Petitioner filed a petition for habeas corpus in the Circuit Court of the City of Richmond following denial of parole in 1992, alleging that there are no institutional procedures by which an inmate can request access to his parole file; that principles of due process and equal protection dictate the decisions of the Parole Board must relate to the statutory mandate for parole and the board published criteria; that the new guidelines issued for parole make parole decisions arbitrary; and that the reasons for denial of parole must be sufficiently detailed as to be informative with regard to the specific aspects of the inmate's profile which constitute the basis for denial of parole.

The habeas corpus petition was denied by the Circuit Court on October 16, 1992. A subsequent appeal to the Supreme Court of Virginia was denied on January 14, 1993.

On November 12, 1993, this action was filed. In timely fashion, respondent has moved for summary judgment.

Following receipt of respondent's motion for summary judgment, petitioner filed a motion for production of documents. The motion was accompanied by a document entitled "Affidavit in Support of Petition" presumably filed in support of the motion for production of documents. The request for production was met with a motion for a protective order.

By Order entered February 16, 1994, the motion for a protective order was granted pending resolution of the outstanding motion for summary judgment.

Thereafter, the Court, *sua sponte,* by Order entered May 19, 1994, requested specific information from the respondent regarding petitioner's prior conduct while on parole. The Order was responded to in timely fashion by both the petitioner and the respondent.

For the reasons which follow, the motion for production of documents is DENIED, and the motion of the respondent for summary judgment should be GRANTED.

### B. Grounds Alleged

Petitioner claims in his petition that the Virginia Parole Board:

(1) abused its discretion and exceeded its statutory authority when it denied him parole based upon the seriousness of the offense; and

(2) that petitioner failed to receive a fair and impartial hearing because he was not furnished with criteria for parole.

Subsequent to the filing of the motion for summary judgment by the respondent (which was accompanied by an affidavit of Clarence L. Jackson, then Chairman of the Virginia Parole Board), petitioner filed a motion for production of documents and submitted with the motion an affidavit raising additional issues arising from the repeated denial of parole to petitioner. In the affidavit, petitioner makes the following supplemental complaints:

(3) that no information concerning criteria for parole is made available to inmates;

(4) that the parole process, as implemented in the Commonwealth of Virginia, is vague, arbitrary, and capricious in that it frames no articulable criteria upon which the *equality* of parole consideration can be ascertained;

(5) that he is as appropriate a candidate for parole as other inmates who have been granted parole;

(6) that the Parole Board is denying him parole as a form of retribution for his previous legal actions instituted against the Department of Corrections;

(7) that denial of access to his parole file is merely a ploy by the Virginia Parole Board to hide from accountability;

(8) that the requirement that he state specific errors in the Parole Board's decision violates due process;

(9) that he objects to the denial of access to his parole file, in support of which he attached a letter to another inmate; and

(10) that there is no institutional procedural manual.

He concludes by asserting that a factual dispute exists.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, the pleadings, or other evidence, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party is not entitled to summary judgment if the dispute about a material fact is "genuine." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party. *Id.* In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict. *Id.*

Finally,

We must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993) (citations omitted).

### B. Entitlement to Parole

A state has no duty to establish a parole system, and a prisoner has no constitutional right to release before the expiration of his sentence, *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979), but when a state chooses to establish a system of parole, the procedures which are adopted must be fundamentally fair, *Jackson v. Shields*, 438 F.Supp. 183, 184 (W.D.Va.1977), and the parole process is subject to due process standards. *Franklin v. Shields*, 569 F.2d 784, 790 (4th Cir.1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978); *Jackson*, 438 F.Supp. at 185.

Parole procedures are dependent upon state law. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under Virginia law, an interest in liberty is created by parole eligibility statutes, *Franklin*, 569 F.2d at 790, and a prisoner has a right to be considered for parole. *Krawetz v. Murray*, 742 F.Supp. 304, 305 (E.D.Va.1990).

However, there are limitations. For example, in establishing the parole process, a state is not required to afford a prisoner the same rights as a trial defendant, *Franklin*, 569 F.2d at 795–97, and the parole hearing is not a formal trial. *Jackson*, 438 F.Supp. at 185. There is neither a right of cross-examination nor a right to attend in person or to have counsel at a parole hearing, and some information may be withheld from a prisoner which could jeopardize rehabilitation programs and discipline within the penal system. *Franklin*, 569 F.2d at 795–97.

It must be kept in mind that in the case now before the Court, the petitioner was convicted of breaking-and-entering and sentenced to seven years in the penitentiary with three years of the term suspended. He entered state custody on April 4, 1983, and was released on discretionary parole on July 13, 1983, only 104 days later. His freedom, however, was shortlived.

On November 11, 1983, four months later, petitioner was arrested for robbery. He was subsequently convicted and sentenced to fif-

teen years, following which his suspended time was revoked and he picked up an additional three years imprisonment.

■ The only issue before this Court is whether the Parole Board, in reaching its decision, has fairly and equally applied the statutes and administrative procedures governing parole to the petitioner.

■ Virginia Code section 53.1–151, establishes a prisoner's eligibility for parole. However, eligibility is not synonymous with entitlement. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104.

In *Greenholtz,* prisoners attacked the due process provisions of the Nebraska parole system, claiming that they had attained eligibility for discretionary parole under Nebraska statutes and had been deprived of parole in violation of their rights. The Supreme Court rapidly rejected any notion of entitlement to parole on the part of the petitioners, and in discussing the burden falling upon the state in the administration of a parole system, said:

> A state may, as Nebraska has, establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. Indeed, the very institution of parole is still in an experimental stage. In parole releases, like its siblings probation release and institutional rehabilitation, few certainties exist. In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in a sense, an "equity" type judgment that cannot always be articulated in traditional findings.

*Id.* at 7–8, 99 S.Ct. at 2104 (footnotes omitted).

In the case at hand, involving breaking-and-entering and robbery, the public's interests in petitioner's release is acute. Petitioner's second period of confinement arises from misconduct while on parole for his original crime. The severity of the crimes simply cannot be ignored. Accordingly, the Parole Board's focus on conduct which has exposed the community to an unacceptable risk as evidenced by a robbery committed only four months after petitioner's release on parole, is highly relevant to the decision making process. The Parole Board is entitled to consider the severity of a prisoner's offenses and the amount of time served relative to each of the offenses in denying parole. *See Greenholtz,* 442 U.S. at 15, 99 S.Ct. at 2108.

■ The Virginia Parole Board must provide written reasons for the denial of parole. *Franklin,* 569 F.2d at 791; *Jackson,* 438 F.Supp. at 184. The Parole Board did so in this case in 1988, 1989, 1990, 1991, 1992, 1993, and 1994, and in each year advised the petitioner of its reasons. On each occasion, the Board relied upon petitioner's prior conduct while on parole as a reason for denial. In 1988, 1992, 1993, and 1994, the Board also expressed concern about the serious nature of petitioner's offenses.

As was stated in *Greenholtz,* "[t]hat the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2105 (emphasis in original). The statutes of the Commonwealth of Virginia, combined with the independence of the Parole Board, furnish petitioner with that continued "possibility."

### C. The Record Does Not Support Petitioner's Claims

■ In his original pleading, petitioner addresses his concerns about being denied parole based upon the seriousness of his offenses and the failure of the Board to furnish criteria. In his affidavit, apparently filed to offset the affidavit of Clarence Jackson, petitioner advances a completely different set of claims. All of the concerns will be briefly addressed.

(1) *There is no evidence to support petitioner's claim (a) that he is on a par with other inmates who have been granted parole (Aff. ¶ 6) or (b) that denial of parole is retribution for a prior legal action instituted by petitioner against the parole board. (Aff. ¶ 7).*

■ No facts are alleged to establish petitioner's parity with other inmates for purposes of granting discretionary parole, nor could any such facts be presented. The affidavit of Clarence L. Jackson, Jr. makes clear that parole is determined on an *individual* basis, not as a collective reflex for individuals who complete a bureaucratic matrix of requirements. Parity is not an issue in the decision to grant parole.

Neither are there facts alleged to support any sort of retributive motive on the part of the Board. Petitioner was considered like any other inmate.

The matters alleged in Paragraphs 6 and 7 of the affidavit are without merit.

Where the moving party has submitted evidence negating the nonmoving party's claim, the opposing party has the "burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Petitioner has not even furnished a scintilla of evidence.

As to this claim, there is no genuine issue of material fact, and summary judgment in favor of the respondent is proper.

(2) *The Parole Board did not exceed its statutory authority by denying parole to petitioner. (Pet.Claim 1).*

■ Petitioner is obviously familiar with the criteria used by the Virginia Parole Board in determining eligibility for release, as evidenced by the parole guidelines pamphlet attached to the original petition and to petitioner's affidavit. There are three components: risk, time served, and disciplinary infractions. In each instance, the Board looks at the specific criminal conduct of a prisoner to determine first, whether that conduct suggests that new offenses will be committed if the prisoner is released to the community, and second, to determine whether the time the prisoner has served is genuinely appropriate given the circumstances of his offense. As noted in *Greenholtz,* the Parole Board must, in each instance "assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice." *Greenholtz,* 442 U.S. at 8, 99 S.Ct. at 2104.

■ It is true that when a state has chosen to establish a system of parole, that system must comport with constitutional standards. *Jackson,* 438 F.Supp. at 184. Under Virginia law, parole eligibility statutes create a liberty interest, *Franklin,* 569 F.2d at 790, and a prisoner has a right to be considered for parole. *Krawetz,* 742 F.Supp. at 305. However, a prisoner has no constitutional right to be released on parole before the expiration of a valid sentence. *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2103. Contrary to the assertions of the petitioner, the seriousness of the underlying crime is an important consideration in determining eligibility for parole. *See Smith v. Hambrick,* 637 F.2d 211, 212–13 (4th Cir.1980); *Walker v. Prisoner Review Board,* 769 F.2d 396, 399 (7th Cir.1985), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986).

The Parole Board has fully complied with the provisions enumerated in Virginia Code sections 53.1–136(2), 53.1–136(6), and 53.1–155.

Petitioner has been denied parole for a constitutionally permissible reason, and respondent is entitled to summary judgment as to this action.

(3) *Petitioner has been provided adequate criteria and sufficient guidelines pertaining to the parole process.*

■ Petitioner complains that he has been provided inadequate criteria (Pet.Claim 2; Fleming Aff. ¶ 3); that no information is made available to prisoners (Fleming Aff. ¶ 4); and that there is no institutional manual describing or establishing parole procedures. (Fleming Aff. ¶ 11). However, the record does not support petitioner's claims.

The brochure furnished to the Court by petitioner clearly informs a prisoner that his parole eligibility will be based upon the potential risks he poses to the public upon release; the amount of time he has served for the offenses for which he is incarcerated; and the effect of disciplinary infractions committed during his incarceration.

The brochure is well written, using plain language. There is no constitutional requirement that a prisoner be furnished with anything more.

Because there is no genuine issue of material fact, respondent is entitled to summary judgment on this claim.

(4) *The Virginia parole process is not vague, arbitrary, or capricious.*

Petitioner claims that the parole process, as implemented by the Virginia Parole Board, "is inherently vague, and arbitrary and capricious in that it frames no articulable criteria upon which the equality of parole considerations can be ascertained." (Fleming Aff. ¶ 5.)

■ The Court is not sure of the precise nature of this claim. If petitioner is claiming a generalized discriminatory application of parole criteria to his case, the matter has already been addressed. If the complaint is directed at the general nature of reasons given for the denial of parole, then the complaint is without merit. Due process requires no more than a hearing and written reasons for denial of parole. *See Franklin*, 569 F.2d at 797. A general statement of the reasons behind the denial of parole need only be rationally related to the standards and criteria adopted by the Parole Board. *See id.; Jackson v. Shields*, 438 F.Supp. 183, 184 (W.D.Va.1977) (no constitutional requirement of a "detailed narrative" listing reasons for denial of parole). In this case, petitioner was denied parole because of the serious nature of his offenses, and because he committed robbery when he was last on parole. Because robbery and breaking-and-entering are serious offenses, the reason the Parole Board stated was sufficient to support denial of parole.

There is no genuine material issue of fact as to this claim, and respondent is entitled to summary judgment.

(5) *Petitioner has not been improperly denied information in his file. (Fleming Aff. ¶¶ 8 and 10).*

■ There is no constitutional requirement that prisoners be given access to their files. *See Ross v. Woodard*, 683 F.2d 846, 846–47 (4th Cir.1982); *Franklin v. Shields*, 569 F.2d 784, 794 (4th Cir.1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). Petitioner has failed to establish the deprivation of a constitutional right, and summary judgment in favor of the respondent as to this claim is appropriate.

(6) *Paragraph 9 of petitioner's affidavit fails to advance a constitutional claim.*

Paragraph 9 states: "[P]etitioner states that any procedure which requires one to state the exact information in his files which is erroneous or, particularly in the case of an omission, is constitutionally [sic] insufficient to guarantee protection of due-process."

Apparently, petitioner is referring to Paragraph 9 of Clarence Jackson's affidavit. However, there are absolutely no particulars.

The claim is unsubstantiated and without merit.

## III. RECOMMENDATION

For all of the foregoing reasons, summary judgment should be GRANTED to the respondent.

It is further recommended that the Court decline to issue any certificate of probable cause for appeal required by Rule 22(b) of the Federal Rules of Appellate Procedure.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 10 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

July 21, 1994.