**Marvin Edward JENNINGS, Petitioner,**

v.

**PAROLE BOARD OF VIRGINIA, Respondent.**

**No. CIV. A. 98–742–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 28, 1999.

Mr. Marvin Edward Jennings, Dillwyn, VA, pro se.

Mark Early, Attorney General, Matthew P. Dullaghan, Assistant Attorney General, Richmond, VA, for Respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

Petitioner, a Virginia inmate proceeding *pro se,* filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on grounds that the Parole Board of Virginia (Parole Board) improperly denied him parole and engaged in other improper parole practices.

The relief sought here includes an order: (1) granting petitioner parole; (2) restoring his good time credits; (3) requiring the Parole Board to provide all parole eligible inmates with its criteria for granting parole; (4) declaring the Parole Board's application of a voting policy violative of the *Ex Post Facto* Clause of the Constitution; (5) granting all parole eligible inmates an opportunity to view their institutional files at least one year before review of their eligibility; (6) declaring that the Parole Board should not deny parole on the ground of the "serious nature of the offense"; and (7) finding petitioner suitable for parole.

In a motion to dismiss filed September 2, 1998, the Parole Board argued that 28 U.S.C. § 2254(d) precluded federal review of petitioner's claims because the Supreme Court of Virginia had reviewed his claims on the merits in a state habeas corpus proceeding. This Court denied the motion, holding that federal review of petitioner's claims was not barred because the Supreme Court of Virginia relied on a procedural bar inapplicable to petitioner's claims. *See Jennings v. Parole Board of Virginia,* 34 F.Supp.2d 375 (E.D.Va.1999). Accordingly, the Parole Board was allowed twenty days to file additional responsive pleadings concerning the merits. It has done so by filing a second dismissal motion and petitioner has responded. Thus, the matter is now ripe for disposition. For the reasons that follow, the Parole Board's

motion must be granted as to all counts, save Claim 4, disposition of which is deferred.

## I.

Petitioner is currently incarcerated at the Dillwyn Correctional Center. The facts and procedural history of this action were thoroughly detailed in the February 5, 1999 Memorandum Opinion and need not be repeated. *See Jennings,* 34 F.Supp.2d at 375. Instead, only a brief recitation of facts is necessary here.

Petitioner was first committed to the custody of the Virginia Department of Corrections on May 17, 1984. He is serving a sentence of life imprisonment for the first degree murder of his wife and a consecutive two years sentence for the use of a firearm in the commission of a felony. He first became eligible for parole on December 14, 1996 and has since been reviewed for parole by the Parole Board on three occasions, each of which resulted in a denial of parole.

Petitioner was first considered for parole on September 3, 1996. By letter dated September 5, 1996, petitioner was informed that the Parole Board had decided not to grant him parole based on the "[s]erious nature and circumstances of the offense."

Petitioner was again reviewed for parole on July 17, 1997. By letter dated July 21, 1997, he was informed that the Parole Board had decided not to grant him parole based on the "[s]erious nature and circumstances of the offense." Petitioner subsequently asked the Parole Board to reconsider its decision, arguing that there was no evidence before the Parole Board indicating that he was unsuitable for release

and that the Parole Board's reason for parole denial was invalid. The Parole Board declined reconsideration.

Finally, petitioner was reviewed for parole on August 12, 1998. In a February 9, 1999 letter, petitioner was informed that the Parole Board declined to grant him parole based on the "[s]erious nature and circumstances of the offense." The Parole Board Chairman further stated that:

the Virginia Parole Board in accordance with the provisions of Sec. 53.1–154 of the Code of Virginia and Virginia Parole Board policy directs that your next parole review will be deferred for 3 years. You will, therefore, be reviewed during your scheduled quarter of 2001.[1]

On September 6, 1998, petitioner appealed that decision, arguing that he was suitable for parole and that the Parole Board abused its discretion by deferring its next review of him for three years. He further stated that he had informed the Parole Board in a letter that the presentence report contained gross inaccuracies. The Parole Board denied his appeal on September 14, 1998.[2]

## II.

Petitioner presents six claims in the instant petition. He argues that the Parole Board violated his rights and abused its discretion when, on all three occasions, it:

(1) found him unsuitable for parole without any basis;

(2) denied him parole without a sufficient explanation, relying instead on a "boiler plate" justification;

(3) revoked his good time credit without authority;

---

1. In an affidavit, the Parole Board Chairman states that the Parole Board opted to defer petitioner's next review pursuant to 1997 and 1984 amendments to Va.Code § 53.1–154, which authorize the Parole Board to defer for three years the next parole review of prisoners who are serving life sentences, or who have ten years of imprisonment or more to serve.

2. On the appeal form, a Parole Board member checked the box next to the statement that "the information on which the request for appeal is based does not show a significant error in the information, policies, or procedures related to the stated reason(s) for the decision."

(4) violated his right to due process by failing to provide him with a copy of the parole criteria and refusing his request to review his file for inaccuracies;

(5) applied a change in Parole Board voting procedures retroactively in violation of the *Ex Post Facto* Clause of the Constitution; and

(6) retaliated against him for asserting his claims in this lawsuit by deferring the next review of his parole candidacy for three years instead of the usual one year review cycle.[3]

A review of these claims discloses that all save one, Claim 4, are meritless. Disposition of Claim 4 must await further briefing.

*Claims 1 and 2:*

Claims 1 and 2 are interrelated as they rely on similar facts and arguments. In Claim 1, petitioner argues that the Parole Board finding that he was unsuitable for parole was unfair and without any basis. Similarly, in Claim 2 petitioner contends that the Parole Board's reliance on the serious nature of his offense and on "boiler plate" language on each of the three parole reviews constitutes an abuse of its discretion.[4] Underlying both claims is petitioner's contention that the Parole Board's determination that he was unsuitable for parole was improper and without any basis

because his model behavior during incarceration clearly indicates that he is suitable for parole.[5] He avers that the Parole Board's decisions violated his constitutional rights as they were unfair, politically motivated, unreasonable, and baseless. These claims are unpersuasive.

The Virginia Parole Board is charged with determining which inmates are suitable for release on parole. *See* Va.Code. § 53.1–136. That statute states that the Parole Board:

> shall [r]elease on parole, in accordance with its rules, for such time and upon such terms and conditions as the Board shall prescribe, persons convicted of felonies and confined under the laws of the Commonwealth in any correctional facility in Virginia when those persons become eligible and are found suitable for parole.

Va.Code. § 53.1–136(2).[6] And it is clear that this statute, "far from creating a presumption that release will be granted, . . . absolutely prohibits parole unless the Parole Board decides otherwise." *James v. Robinson*, 863 F.Supp. 275, 277 (E.D.Va. 1994) (citing *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (quotations omitted)). Thus, pursuant to Virginia law, the Parole Board is accorded

---

3. Claim 6 concerns only the Parole Board's denial of petitioner's parole in 1998.

4. Petitioner states that the seriousness of his underlying offense was considered when his eligibility for parole was determined, and that the Parole Board's consideration of this same factor when his suitability for parole was determined constitutes an additional punishment. He argues that it is unfair for inmates with both bad and good institutional records to be denied parole on the same basis, namely the seriousness of the underlying offense.

5. More specifically, petitioner states that he had a high school diploma when he entered the Virginia Department of Corrections (VDOC), and is now a candidate for a Master of Arts degree. Further, in 1989, petitioner was appointed Director of Education for Chaplain Service of the Churches of Virginia, an organization that supplies chaplains to all VDOC institutions. That same year, he was

appointed coordinator of religious services at Southampton Correctional Center. Additionally, petitioner avers (I) that he has performed hundreds of hours of counseling with inmates, and (ii) that he has been employed without interruption since 1984 and has received the highest possible work grades and evaluations. According to petitioner, he has never used drugs or had any alcohol-related problems. Neither has he any mental, emotional, or psychological deficiencies. And finally, he points out that before the convictions that led to his current incarceration, petitioner had no criminal history.

6. *See also* Va.Code § 53.1–155 (stating that, before granting an inmate parole, the Parole Board shall "determine that his release on parole will not be incompatible with the interests of society or of the prisoner").

the broadest discretion to grant or deny parole. *See James*, 863 F.Supp. at 277. As such, petitioner's claim that the Parole Board abused its discretion is without merit. Nor is there any indication that the Parole Board exceeded its authority. On each occasion that parole was denied, petitioner was provided with the Parole Board's written reason for the decision. And on each occasion that parole was denied, the Parole Board's stated reasons were appropriate, for it is well settled that the Parole Board is entitled to consider the seriousness of the inmate's offense, the circumstances surrounding the crime of conviction, and the amount of time served relative to each offense in denying parole. *See·Greenholtz*, 442 U.S. 1 at 15, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Fleming v. Murray*, 888 F.Supp. 734, 740 (E.D.Va. 1994). Simply put, the Parole Board does not abuse its discretion when it denies an inmate parole based on the seriousness of the underlying criminal offense.[7] *See Id.* at 739.[8] *See also Bloodgood v. Garraghty*, 783 F.2d 470 (4th Cir.1986) (holding that the heinous nature of the offense giving rise to an inmate's incarceration is a constitutionally valid ground upon which to base the denial of parole); *Smith v. Hambrick*, 637 F.2d 211, 212–13 (4th Cir.1980).[9]

In sum, the Parole Board appropriately relied on the seriousness of petitioner's offense and its attendant circumstances in making the parole decisions in issue. And petitioner's sincere belief that he is suitable for parole and his disagreement with the Parole Board's reliance on the seriousness of his offense as the ground for its decisions does not entitle him to relief. *Claim 3:*

▮ In Claim 3, petitioner alleges that the Parole Board revoked his good time credits without cause and in excess of its authority in violation of the Due Process Clause of the Fourteenth Amendment. Petitioner contends that when the Parole Board denied him parole, it effectively decimated the good time credits he had earned for his exemplary behavior in prison.

This claim is specious. Although Virginia inmates have a liberty interest in earning good time credits,[10] the Parole Board's denials have not affected petitioner's liberty interests; the Parole Board has neither deprived petitioner of the opportunity to earn such credits, nor has it revoked any of the credits he has already earned. Because petitioner is serving a life sentence, he can earn no more than ten days of good time credit for every thirty days served.[11]

---

**7.** The Parole Board Chairman's affidavit explains this principle. He states that because the safety of the public weighs heavily in the Board's parole decisions:

the nature and particular circumstances of an inmate's crime, when considered along with all mitigating and aggravating factors, may preclude his release on parole. If the Board does not have sufficient confidence in the inmate's ability to succeed on parole, or if his release on parole would not best serve the interests of society and the inmate, he may not be granted parole.

The Chairman acknowledges that the seriousness of an inmate's offense does not change, but notes that:

the Board considers at each review for parole whether an inmate's conduct and positive adjustment while in prison, when considered with all other factors, may outweigh the concerns that the Board has for the offense.

**8.** Petitioner correctly notes that the *Fleming* court stated that the seriousness of the under-

lying crime "is an important consideration in determining *eligibility* for parole." 888 F.Supp. at 740 (emphasis added). Yet, because *Fleming* dealt with the denial of parole, it is clear even from that decision that the relevance of the underlying crime is not limited to parole eligibility, but extends also to the grant or denial of parole.

**9.** Petitioner cites several cases for the proposition that a Parole Board's exclusive reliance on the seriousness of the offense to deny parole may be arbitrary, capricious, or irrational. However, the cases cited are not binding on this Court as they are from other circuits or because they do not directly support petitioner's argument.

**10.** *See Brown–El v. Virginia Parole Board,* 948 F.Supp. 558, 560 (E.D.Va.1996).

**11.** Virginia Code § 53.1–199 states, in relevant part, that:

But significantly, this credit counts only toward hastening petitioner's parole eligibility date, not his release date, as he has no such date; he is serving a life sentence. Thus, for inmates serving life sentences, good time credits serve only to hasten the parole eligibility date and once this date arrives, further good time credits have no further effect, except insofar as inmates who do not thereafter earn "good time" are unlikely to win parole.

In sum, petitioner became eligible for parole on December 14, 1996. Since that date, petitioner has remained eligible for parole, even though he is only periodically reviewed for parole. Thus, the good time credits petitioner earned since December 14, 1996 are effectively a nullity, except insofar as the failure to earn such credits may adversely affect his suitability for parole. While good time credits may reduce the term of confinement for an inmate with a determinant sentence, Virginia law makes clear that good time credits earned by an inmate with a life sentence may only affect his parole eligibility date, not his release date. Consequently, Claim 3 fails.

*Claim 4:*

Petitioner argues in Claim 4 that the Parole Board violated his right to due process in his parole hearings (1) by failing to provide him with a copy of its parole eligibility criteria, and (2) by refusing to allow him to review his file for inaccuracies.

■ Although an inmate has no constitutional right to be conditionally released before the expiration of a valid sentence, a state statute may create a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment. *Hill v. Jackson*, 64 F.3d 163, 170 (4th Cir.1995). This is not so, however, with respect to the Virginia parole stat-

... any person who has been sentenced to a term of life imprisonment or two or more life sentences shall be classified within the system established by § 53.1–201 [describing Virginia's good conduct allowance system]. Such person shall be eligible for no

utes; they create no liberty interest in parole release. *Id.* Although inmates surely have an interest in parole consideration generally, there is no "protected liberty interest in the procedures themselves, only in the subject matter to which they are directed." *Id.* (quoting *Ewell v. Murray,* 11 F.3d 482, 488 (4th Cir.1993)). Because inmates have no liberty interest in parole release under Virginia law, they cannot have any liberty interest in the underlying procedures governing parole determination, provided the procedures themselves satisfy due process. *Id.* And to satisfy due process, the Parole Board need only make the criteria used by the Parole Board readily available to inmates being reviewed for parole and furnish such inmates with a written statement of its reasons for denying parole. *See Franklin v. Shields,* 569 F.2d 784, 793, 797 (4th Cir.1977); *Fleming,* 888 F.Supp. at 739.

■ As to petitioner's first argument, he contends that he was never provided with the criteria used by the Parole Board in its parole decisions. In support of this claim, petitioner submitted an inmate request form, dated August 8, 1997, in which he asked for a copy of the Parole Board's criteria. Petitioner also submitted the September 22, 1997 response he received from W.L. Cribb, SCC Director of Counseling Services, wherein Cribb stated that:

> I do not know whether a document addressing this issue actually exists. The parole board probably uses certain criteria in determining a prisoner's suitability for release. I do not know whether it is written down or not. The parole board has not provided this institution with anything of this nature.

Cribb further suggested that petitioner contact the Parole Board. On August 15, 1997, petitioner sent a letter by registered

more than ten days good conduct credit for each thirty days served, regardless of the class to which he is assigned. One-half of such credit shall be applied to reduce the period of time he shall serve before being eligible for parole....

mail to the Parole Board requesting a copy of its criteria. Petitioner avers that he never received a reply to his inquiry.

In response, the Parole Board states that it has developed advisory guidelines to aid in its decision-making and that copies of the Parole Guidelines pamphlet and the Parole Board policy manuals are maintained in the libraries of all VDOC institutions. In addition, the Parole Board states that Richard Crossen, Deputy Director of the Parole Board, responded to petitioner's request. The Parole Board has submitted a copy of a letter from Crossen to petitioner, dated September 27, 1997, which states:

> [i]n response to your recent letter, we are providing the following information. The institutional law libraries have been provided a copy of the Parole Board Policy and Guidelines manuals. We suggest you visit the library for that information. Your counselor can request additional copies for the library.

The Parole Board contends that it did not receive any additional inquiries from petitioner or Cribb. Petitioner avers that he never received Crossen's letter.

Taking all of petitioner's assertions as true, as required when reviewing a motion to dismiss, petitioner has shown that he was not provided the criteria used by the Parole Board. This constituted a violation of petitioner's right to due process, which requires the Parole Board to make parole criteria readily available to all parole eligible inmates. *See Franklin,* 569 F.2d at 792–93.[12]

This does not end the analysis, however, as there is no showing in the record that petitioner was harmed by this technical constitutional violation. It appears that petitioner addressed the Parole Board's criteria in his presentations to the Parole Board. There is no showing that if he had received a copy of the Parole Board's criteria, he would have submitted different information or that the Parole Board would have been more likely to deem him suitable for parole. Based upon this record, this due process violation appears to constitute a harmless error. Yet, because petitioner has not been provided with an opportunity to address this issue and because he has brought this petition *pro se,* the Parole Board's motion to dismiss this aspect of Claim 4 will be deferred to afford petitioner an opportunity to submit additional information concerning any material harm he suffered as a result of this putative due process violation. If petitioner contends that he was harmed, he may brief the Court as to the appropriate remedy for this violation.[13] The Parole Board will

---

12. The *Franklin* Court quoted a commentator as stating that "[i]t is an essential element of justice that the rules and processes for measuring parole readiness be known to the inmate.... One can imagine nothing more cruel, inhuman, and frustrating than serving a prison term without knowledge of what will be measured and the rules for determining whether one is ready for release." 569 F.2d at 792.

13. On a collateral point, petitioner contends that the Parole Board exceeded its authority when it failed to follow its regulations. According to petitioner, Section 1.218 of the Parole Board's Policy Manual states that guidelines are to be used in making parole decisions. He states that the Parole Board's reliance on factors other than his behavior in prison in its parole decisions was arbitrary, capricious, and an abuse of discretion.

The Parole Board's Parole Guidelines pamphlet states that the Parole Board utilizes four components in making its decisions: (1) risk; (2) time served; (3) disciplinary infractions; and (4) auxiliary information. Such information provided in such a format has been found sufficient to satisfy the requirements of the Due Process Clause. *See Fleming,* 888 F.Supp. at 741. According to the Guidelines, the risk component is used to determine the probability a new felony may be committed after release, and may include an inmate's "past behavior and criminal history." Thus, the Guidelines empower the Parole Board to consider the seriousness of an inmate's offense. Moreover, as the Guidelines explain, Parole Board members retain the ultimate discretion as to what factors they will consider in making parole determinations as the Guidelines are "strictly advisory for the Board members to follow at their discretion."

thereafter be given an opportunity to respond.

■ As to petitioner's second argument in Claim 4, he contends that he has been prohibited from reviewing his institutional file in violation of due process. He states that without being given an opportunity to review his file, he has no way to verify whether the information provided to the Parole Board has been incorporated into his file or is accurate.[14] There is no constitutional requirement that inmates who are eligible for parole be given access to their files. *See Fleming,* 888 F.Supp. at 741 (citing *Ross v. Woodard,* 683 F.2d 846, 846–47 (4th Cir.1982)).[15] As such, this claim fails.

The Parole Board's motion to dismiss must be granted in all respects on Claim 4, save as to petitioner's claim that he was deprived of the criteria used by the Parole Board in violation of his right to due process. Disposition of this claim is deferred pending further briefing by the parties on (i) whether petitioner suffered any harm as a result of respondent's failure to provide access to the Parole Board's criteria, and, (ii) if so, what relief should be afforded, and, if not, whether the claim should be dismissed.

*Claim 5:*

In Claim 5, petitioner argues that the Parole Board retroactively applied a change in its voting procedures in violation of the *Ex Post Facto* Clause of the Constitution. Petitioner was convicted in 1984 for crimes that occurred in 1983. He first became eligible for parole on December 14, 1996. Petitioner contends that the Parole Board's application of its new voting policy, which became effective in 1989, was *ex post facto.* More specifically, under the Parole Board's pre–1989 policy, only a simple majority vote of three of the five members of the Parole Board was required for an inmate to be granted parole. Under the post–1989 policy, four members of the Parole Board must affirmatively vote to grant parole to all parole eligible inmates serving life sentences for first degree murder.[16]

■ The *Ex Post Facto* Clause states that "[n]o ... ex post facto Law shall be passed." U.S. CONST. art I, § 9. To fall within this prohibition, a law must (1) be retrospective; and (2) must disadvantage the offender affected by it by altering the definition of the criminal conduct or increasing punishment for the crime. *United States v. Lominac,* 144 F.3d 308, 311 (4th Cir.1998). These principles, applied here, make clear that petitioner's *Ex Post Facto* claim is baseless.

■ In the first place, the voting policy at issue here is outside the ambit of the *Ex Post Facto* Clause because it is a policy, not a law.[17] Moreover, even if *ex*

As such, petitioner's claim on this ground fails.

14. Petitioner avers that a Parole Examiner informed him that his presentence report seemed "a bit contradictory."

15. In a statement filed February 4, 1999, petitioner avers that the presentence report relied on by the Parole Board contains inaccuracies. He states that the report states that he wrote the suicide note used to convict him of murder, even though all laboratory analysis conducted in conjunction with his trial resulted in an inconclusive finding as to the note's authorship. Petitioner refers to a suicide note in which his former wife purportedly stated that she wished to kill herself. Petitioner further states that a lab analysis performed for gunshot residue was positive as to his former wife and that such an analysis was not performed on him. It appears that he objects to the exclusion of that information from the report. Finally, petitioner objects to the report's statement that he shot his wife because of the inconsistencies presented at trial as to who fired the gun.

16. *See* Virginia Parole Board Policy, Administrative Procedure No. 1.206.

17. In a case involving similar facts, the Fourth Circuit held that the retroactive application of an amendment to South Carolina's parole procedures to require a two-thirds vote of the Parole Board, rather than a simple majority vote, did not violate the *Ex Post Facto* Clause. *Roller v. Gunn,* 107 F.3d 227, 239 (4th Cir.1997). In the words of that deci-

post facto analysis were applicable to a policy, the voting policy clearly does not violate the Constitution as it neither alters the definition of petitioner's criminal conduct nor increases the punishment for his crime.

On a collateral point, petitioner attacks the validity of a Parole Board deferral policy, enacted pursuant to Va.Code § 53.1–154, which authorizes the Parole Board to defer parole review for up to three years for certain categories of inmates, including those serving life sentences. The Parole Board relied on this policy when it deferred petitioner's next parole review for three years in 1998. Because the Fourth Circuit has validated this deferral policy, stating that it does not violate the *Ex Post Facto* Clause, petitioner's challenge fails. *See Hill,* 64 F.3d at 169.[18]

*Claim 6:*

■ In Claim 6, petitioner argues that the Parole Board deferred its next parole review of petitioner for three years at his most recent parole hearing in retaliation for his filing of this lawsuit. At the Parole Board's 1996 and 1997 parole reviews of petitioner, his subsequent parole reviews were deferred for one year. In his 1998 review, however, the Parole Board de-

ferred its next review of petitioner's parole candidacy for three years. Petitioner contends that this three year deferral must have been retaliatory because the only change in his record before the 1998 review was his receipt of a scholarship for post-graduate studies.

Pursuant to a Virginia policy in effect since 1993, the Parole Board is authorized to defer review of an inmate serving a life sentence for up to three years.[19] Thus, the Parole Board, as authorized under Virginia law, was within its authority to defer its next parole review of petitioner for three years. Petitioner's assertion that the Parole Board elected this deferral in retaliation for this lawsuit is pure conjecture. Without any supporting evidence, petitioner's mere assertion that this deferral was improper and retaliatory is not a basis for granting the writ sought here.

### III.

For the reasons stated here, the Parole Board's motion to dismiss must be granted in part and denied in part. The motion must be granted in all respects, save as to petitioner's argument in Claim 4 that he was deprived of the Parole Board's crite-

sion, the South Carolina Parole Board's two-thirds majority requirement was "simply a procedural change in South Carolina's parole system" and that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.* (quoting *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)).

**18.** Petitioner also claims that Parole Board Chairman Tucker was not properly confirmed. As such, he concludes that the parole decisions made by the Parole Board are void because Virginia law requires members of the Parole Board to be confirmed by the General Assembly. *See* Va.Code § 53.1–124. In an amendment to his complaint, petitioner contends that Mary Geisen of the Virginia General Assembly advised him that she could not locate a date of Chairman Tucker's confirmation in the Assembly's records.

Chairman Tucker was confirmed by the Virginia General Assembly in its 1996 Regular

Session. In the 1996 Virginia Senate Joint Resolution No. 144, the appointment of E. Montgomery "Monty" Tucker as Chairman of the Virginia Parole Board was confirmed, effective March 4, 1996, to serve for an unexpired term to succeed Bruce Carl Morris. *See* 1996 VA S.J.R. 144(SN) (available in the "Bills–Old" database on Westlaw).

**19.** The Fourth Circuit explained that the policy was adopted upon the recommendation of a legislative study concluding that such deferrals would improve operational efficiency. *Hill,* 64 F.3d at 166. According to the Parole Board Procedural Guide, the policy is designed to reduce inmates' sense of false hope, as inmates covered by these procedures are most likely to receive multiple denials of parole, and to respond to the community's concerns regarding the frequency of parole reviews. *Id.*

ria. Disposition of this claim is deferred pending further briefing by the parties.